**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-03516-WJM-SKC

MARTHA MUTHONI

    Plaintiff,

v.

LITTLETON ADVENTIST HOSPITAL
   d/b/a PORTERCARE ADVENTIST HEALTH SYSTEM

    Defendant.

---

## DEFENDANT'S MOTION TO DISMISS

Defendant, PorterCare Adventist Health System d/b/a Littleton Adventist Hospital ("Defendant"), by and through its undersigned counsel, respectfully submits this Motion to Dismiss and as grounds, therefore, states the following:

### Summary of Argument

Plaintiff Martha Muthoni ("Muthoni") was represented by counsel who filed a previous employment-related lawsuit in state court against Littleton Adventist Hospital, which is a d/b/a of PorterCare Adventist Health System. The state court Summons and Complaint as served, Complaint with filing stamp, Motion to Dismiss, Response Brief and Order of Dismissal are attached as Exhibits A through E. Because that lawsuit was resolved on the merits, it precludes this action. Assuming that the claims she has filed *pro se* in this case had any merit, Muthoni and her prior counsel should have included those claims in the prior lawsuit. Her attorney, however, was apparently not willing to pursue them.

## Chronological Statement of Relevant Facts

Martha Muthoni was discharged from her employment at Littleton Adventist Hospital on February 13, 2018 for sexually harassing conduct, including grabbing another employee in the groin area.

In her Charge of Discrimination (Doc. 1-1, attached to the Complaint in this action), Muthoni asserted that the earliest date discrimination took place was 06/18/2017, her hire date, and the latest date discrimination took place was 02/13/2018, the date of her discharge.

Four months after discharge, the Centura Health Legal Department was served on June 14, 2018, a summons and complaint filed by the law firm of Harry L. Simon, P.C. on behalf of Martha Muthoni. Ex. A. On June 19, 2018, that complaint was filed in state court. Ex. B.

The state court Complaint asserted: "Defendant owes Plaintiff the sum of $5,000.00 together with attorney fees, costs and interest, as the result of failing to produce a copy of the Plaintiff's Employment and Personnel File upon request by the Plaintiff after alleging certain misconduct by the Plaintiff which resulted in termination of the Plaintiff from her employment with the Defendant." Ex. B.

The Hospital filed a Motion to Dismiss. Ex. C. Muthoni filed a Response which stated: "Plaintiff is simply seeking the relief that she is entitled to pursuant to C.R.S. § 8-2-129 together with the damages incurred by the Plaintiff from her wrongful discharge and termination of employment." Ex. D, p. 3. This statement demonstrates that Muthoni and her counsel were aware of possible discharge-related claims at the time. The response also stated: "Based on the foregoing the Plaintiff will potentially need to amend her original Complaint to include claims of defamation and such other claims that are appropriate as a result of the Defendant's actions." Ex. D, p. 4.

Therefore, Muthoni and her counsel were aware of her right to amend the complaint under the Colorado Rules of Civil Procedure. However, Muthoni never requested a stay so that administrative remedies under Title VII could be exhausted and never amended the original complaint.

On July 25, 2018, the state court pointed out that the Complaint, as drafted, was limited to seeking damages for failure to produce the personnel file:

> Plaintiff argues that she "is simply seeking the relief that she is entitled to pursuant to C.R.S. §8-2-129 together with the damages incurred by the Plaintiff from her wrongful discharge and termination of employment. " This is simply not the case.

Ex. E. The state court ruled that C.R.S. §8-2-129 does not create a private right of action and dismissed the complaint for failure to state a claim. Ex. E. That ruling has become final, since the Complaint was never amended and the dismissal was never appealed.

Following dismissal and prior to the deadline for appeal, Muthoni did not assert any additional claims in an amended complaint under Rule 15(a) of the Colorado Rules of Civil Procedure which permits plaintiffs to amend their complaint as a matter of right before a responsive pleading (an Answer) is filed. Since a motion to dismiss is not a responsive pleading, Muthoni or her counsel could have amended her complaint as a matter of right without permission from the court or from the parties. *Fladung v. City of Boulder*, 165 Colo. 244, 438 P.2d 688 (1968) (where the defendant merely files a motion to dismiss for failure to state a claim without an answer, plaintiff then would be entitled to amend his complaint as a matter of right). Despite that absolute right, Muthoni never submitted an amended complaint to assert wrongful discharge, defamation, discrimination, or any other causes of action. Apparently, she or her counsel at that time did not feel that there were sufficient grounds to warrant the filing of an amended complaint.

Then Muthoni on her own (without assistance of counsel) submitted a charge of discrimination to the EEOC on December 7, 2018. Doc. 1-1.

The initial 180 days for the EEOC to investigate and process the charge expired on Wednesday, June 5, 2019.

The EEOC was "unable to conclude that the information obtained establishes violations of the statutes" and issued a Dismissal and Notice of Rights on September 13, 2019.  Doc. 1-1.

Muthoni *pro se* filed this federal court complaint on December 12, 2019.

### **Applicable Legal Standard**

In evaluating a Rule 12(b)(6) motion to dismiss, the court assesses the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). The court also examines any documents "incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), and documents attached to the complaint, *Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172, 1189 (10th Cir. 2012) (quotations and citations omitted). Therefore, this Court may consider Muthoni's administrative charge and right to sue letter that were attached to the Complaint.

Also, a court may take judicial notice of facts which are matters of public record, *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006), and of state court documents, *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008). Accordingly, this Court may take judicial notice of Exhibits A through E.  See Fed.R.Evid. 201; *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 89 S.Ct. 935 (1969); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of

proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). And the Court may do so without converting the motion to dismiss into a motion for summary judgment. See *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004) (facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment); *Turner v. City of Tulsa*, 525 Fed.Appx. 771, 773 (10th Cir. 2013) (same).

## ARGUMENT

I. **THE DOCTRINE OF RES JUDICATA, OR CLAIM PRECLUSION, PREVENTS A PLAINTIFF FROM SPLITTING HER CLAIMS INTO MULTIPLE LAWSUITS.**

> The doctrine of res judicata prohibits a party from asserting in a second lawsuit any matter that might have been asserted in the first lawsuit. *Prospero Associates v. Burroughs Corp.,* 714 F.2d 1022, 1025 (10th Cir. 1983). In order for the doctrine to apply, three elements must be present: (1) the first suit must have proceeded to a final judgment on the merits; (2) the parties must be identical or in privity; and (3) the suits must be based on the same cause of action.

*Clark v. Haas Group, Inc*., 953 F.2d 1235, 1236 (10th Cir. 1992).

Here, the parties in both suits are identical. And the dismissal in the state court action was a judgment on the merits of the claim submitted. Therefore, res judicata bars this suit to the degree that it was based on the same cause of action as the state court suit. In determining whether suits are based on the same cause of action, the Tenth Circuit applies the transactional approach, as set forth in the Restatement (Second) of Judgments § 24 (1982). *Petromanagement Corp. v. Acme-Thomas Joint Venture,* 835 F.2d 1329 (10th Cir. 1988). See *Yapp v. Excel Corp.,* 186 F.3d 1222, 1227 (10th Cir. 1999) (citing Restatement (Second) of Judgments § 24 (1982)). This approach requires the Court to take into account three factors:

> whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or useage.

Restatement § 24(2).

Parties cannot avoid res judicata by simply alleging new legal theories. *Clark*, 953 F.2d at 1238, citing *Bolling v. City & County of Denver, Colorado*, 790 F.2d 67 (10th Cir. 1986) (res judicata barred plaintiff's 42 U.S.C. §§ 1981 and 1983 claims for termination based on sex and race where plaintiff failed to raise those claims in her prior state action which challenged the employer's stated reasons for her termination).

"Under the doctrine of claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" See *Rivet v. Regions Bank of La.*, 522 U.S. 470, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912 (1998)) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981)). Piecemeal litigation undercuts the finality of judgments, which res judicata seeks to ensure. See *Nevada v. United States*, 463 U.S. 110, 129-30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983).

> The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases." *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002). We review for abuse of discretion when a district court's "dismissal for claim-splitting was premised in significant measure on the ability of the district court to manage its own docket," id., and will reverse the district court only if we find its judgment "exceeded the bounds of the rationally available choices given the facts and the applicable law in the case at hand."

*Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1186 (10th Cir. 2008).

*Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011).

The Restatement (Second) of Judgments § 24(1) (1982) explains the rule against "claim splitting":

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Mascarenas Enterprises, Inc. v. City of Albuquerque*, 494 Fed.Appx. 846, 851, 2012 WL 3292396, 4 (10th Cir. 2012). Where a plaintiff had an opportunity to amend a Title VII complaint to add ERISA or other claims, but failed to do so, the plaintiff cannot remedy that defect by bringing another suit alleging a different legal theory involving the same plaintiff, defendant, and operative facts. *Myers v. Colgate-Palmolive Co.*, 102 F.Supp.2d 1208, 1224 (D.Kan. 2000); See, also, *Katz v. Gerardi*, 655 F.3d 1212, 1218-19 (10th Cir. 2011).

In employment claims, the Tenth Circuit has consistently held that "all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes." *Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000). See *Wilkes v. Wyoming Dept. of Employment Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002); *Clark v. Haas Group, Inc.,* 953 F.2d 1235, 1239 (10th Cir. 1992); *Yapp*, 186 F.3d at 1228; *Leo v. Garmin Intern., Inc.,* 464 Fed.Appx. 737 (10th Cir. 2012); *Gardner v. Central Texas College*, 259 Fed.Appx. 136, 138 (10th Cir. 2007); *Coffman v. Veneman*, 175 Fed.Appx. 985 (10th

Cir. 2006). Plaintiff's Title VII claims arise from the same employment relationship addressed in the state court case.

## II. THE FACT THAT MUTHONI HAD NOT RECEIVED A RIGHT-TO-SUE LETTER FROM THE EEOC AT THE TIME OF THE STATE COURT ACTION DOES NOT JUSTIFY SPLITTING CLAIMS.

The Tenth Circuit has squarely held that lack of a right-to-sue letter provides no exception to the general rule of claim preclusion. *Wilkes*, 314 F.3d at 504-505. *Cf Haynes v. Kansas*, 261 Fed.Appx. 87 (10th Cir. 2008) (rejecting argument that EEOC filing requirements prevent plaintiffs from raising discrimination claims in an initial suit). In *Wilkes*, the plaintiff contended that claim preclusion should not bar the second suit because she was statutorily prohibited from bringing her Title VII claim until she received her right-to-sue letter from the EEOC. The Tenth Circuit rejected that argument, finding that the plaintiff could have requested a right-to-sue notice, and then amended her equal pay act complaint to add her Title VII claim. Alternatively, the plaintiff could have filed her equal pay claim, sought a stay in the district court, let the EEOC complete its administrative process, waited to receive her right-to-sue letter, then added her Title VII claim to her initial lawsuit by amending her complaint pursuant to Federal Rule of Civil Procedure 15. 314 F.3d at 506.

Here, as in *Wilkes*, the "transaction" for res judicata purposes was the plaintiff's employment:

> This court repeatedly has held that "all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes." *Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000). See *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1239 (10th Cir. 1992) (holding plaintiff's second suit was barred by claim preclusion because "the 'claims' in each case were predicated on [plaintiff's] employment"); *Yapp*, 186 F.3d at 1228 (stating "[t]he court in *Clark* eliminated all

>ambiguity in the meaning of 'transaction' in this factual context: it stated that the 'transaction' was Clark's employment" (internal quotations omitted)). In *Clark* and *Yapp*, the plaintiffs brought actions against their former employers under the Fair Labor Standards Act, 29 U.S.C. § 216(b), for unpaid overtime compensation, and later brought second actions against their former employers for wrongful discharge. On appeal, this court held that plaintiffs' second suits were precluded since they were based upon the same transactions, i.e., the employment relationships.

*Wilkes*, 314 F.3d at 504-505. The *Wilkes* court barred plaintiff's Title VII claim because it arose from the same transaction—plaintiff's employment relationship—as did her first lawsuit alleging FLSA violations. See *King v. Union Oil Co. of California*, 117 F.3d 443 (10th Cir. 1997) (finding the employee's termination and later denial of benefits were separate factual events but were related transactions, so res judicata barred plaintiff from bringing ERISA claim separate from his discrimination and retaliation claims.)

### III.  MUTHONI HAD OPTIONS THAT WOULD HAVE ENABLED HER TO BRING ALL CLAIMS RELATED TO HER EMPLOYMENT IN THE SAME ACTION.

Muthoni could have brought all her claims in the first action. "One major function of claim preclusion ... is to force a plaintiff to explore all facts, develop all theories, and demand all the remedies in the first suit." *Stone v. Department of Aviation*, 453 F.3d 1271, 1279 (10th Cir. 2006) (quoting 18 Federal Practice and Procedure, §4408).

>...The argument that it was not possible to bring all related theories of recovery or demands for relief in a first action may not overcome a claim-preclusion defense if the plaintiff could have made it possible. A contemporary illustration is provided by discrimination claims that can be brought only after initial recourse to an administrative agency. A plaintiff who sues first on a theory that does not require resort to the agency and then sues again after clearing the agency process may find that claim preclusion arises from failure to take readily available steps to ensure that both theories could be tried together.

*Stone*, 453 F.3d at 1279, n. 10 (10th Cir. 2006), quoting 18 Federal Practice and Procedure § 4409 (emphasis added). See *Wilkes*, 314 F.3d at 506 (noting that the plaintiff can always request a right-to-sue letter from the EEOC once the charge has been pending before that agency for 180 days.)

A litigant awaiting a right-to-sue letter from the EEOC has at least five options to preserve his claim:

> (1) he can ask the EEOC or its state counterpart to accelerate the administrative process; (2) he can seek an agreement with his former employer not to plead the statute of limitations; (3) he can agree with his employer to split a single claim into two or more suits; (4) he can delay the filing of the first suit until the last possible moment; or (5) he can request that the court postpone or stay the first case until he receives the right-to-sue letter.

*Brzostowski v. Laidlaw Waste Sys., Inc.,* 49 F.3d 337, 339 (7th Cir. 1995). See *Czarniecki v. City of Chicago*, 633 F.3d 545, 550-51 (7th Cir. 2011). Muthoni and her counsel did none of these, and, consequently, cannot show that she was unable to bring all of her claims together.

Furthermore, a litigant need not wait the full 180 days before receiving his right-to-sue letter. Instead, a plaintiff may request an earlier right-to-sue letter, as the relevant regulation states:

> [w]hen a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued ..., the Commission may issue such notice ... at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided, that ... it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.

29 C.F.R. § 1601.28(a)(2). See *Beaver v. Prudential Ins. Co. of America*, 1995 WL 670119, 2 (D.Kan. 1995).

Muthoni's Title VII charge of discrimination could have been filed immediately after her discharge and prior to the filing of her state court lawsuit. The federal court complaint addresses only events that occurred prior to her discharge on February 13, 2018. Her actual charge, once she filed it, was not processed in 180 days, demonstrating that which is well known to litigants in this jurisdiction, that the EEOC probably will not be able to complete its administrative processing of a charge within 180 days of its filing. Accordingly, it is very likely that the EEOC would have issued a right to sue letter to Muthoni if she had filed a charge and then requested a right to sue letter prior to filing her state court lawsuit.

Also, Muthoni or her counsel could have requested a stay of the state court action until after EEOC remedies were exhausted, and then could have amended the Complaint. Litigants dealing with time constraints have a very strong case for requesting a stay. See *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 225 (7th Cir. 1993) (noting a plaintiff who files some claims to preserve them while exhausting Title VII administrative remedies could ask the district court for a stay and "would have a very strong case for doing so."); *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999) ("We believe that district courts are likely to look favorably on applications for stays of FMLA proceedings while plaintiffs promptly pursue administrative remedies under Title VII and similar state laws and we urge them to do so.").

In this case, Muthoni did not request a stay or seek to amend her complaint at any point in time. Muthoni had the opportunity and the ability to perfect and exhaust in her first lawsuit all of the claims she makes in this case. Instead of doing so, Muthoni and her counsel sat on her claimed rights and are now burdening the courts and the defendant by claim splitting. The facts asserted in

this case and in the state court action arise out of the same employment relationship and are sufficiently related to warrant resolving them together.

Respectfully submitted this 25th day of February, 2020.

HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

*s/ Mark L. Sabey*
Mark L. Sabey
M. Brian Sabey
Hall Render Killian Heath & Lyman, P.C.
1512 Larimer Street, Suite 300
Denver, CO 80202
Telephone: (303) 801-3538
Telephone: (720) 282-2025
marksabey@hallrender.com
briansabey@hallrender.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 25th day of February, 2020, a true and correct copy of the foregoing was filed via the CM/ECF with service via U.S. Regular Mail upon the following:

Martha Muthoni
18983 East Mercer Drive
Aurora, CO 80013

*Plaintiff – Pro Se*

*s/ Crystal J. Sebastiani*
Crystal J. Sebastiani, Paralegal